**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| ALLISON KATHLEEN LEBLANC, )<br><br>Plaintiff, )<br><br>vs. )<br><br>MIS INC., *et al.,* )<br><br>Defendants. ) | CIV A. NO. 24-0209-KD-MU |

## REPORT AND RECOMMENDATION

Plaintiff Allison Kathleen LeBlanc, proceeding *pro se*, filed an Amended Second Amended Complaint (referred to herein as "the Complaint") against several defendants, including Sheriff Huey Mack and Deputy Clarence Herring, on April 4, 2025. (Doc. 67). This action was referred to the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4) and is now before the Court on these Defendants' motion to dismiss (Doc. 81, 82), Plaintiff's response thereto (Doc. 85), and Defendants' reply. (Doc. 86). For the reasons stated below, it is recommended that Defendants' motion to dismiss be granted, in part, and denied, in part, as set out.

## I. Factual Allegations/Uncontroverted Facts[1]

On April 4, 2025, Allison-Kathleen LeBlanc filed her Amended Second Amended Complaint, which is now the operative complaint, asserting claims against Defendants MIS, Inc., Deputy Sheriff Clarence Herring, and Baldwin County Sheriff Huey Hoss

---

[1] For consideration of this motion to dismiss, Plaintiff's factual allegations have been accepted as true and viewed in the light most favorable to Plaintiff. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

Mack for "violations of [her] civil rights."[2] (Doc. 67, PageID. 591). LeBlanc set forth the following ***relevant*** allegations in support of her claims against Mack and Herring in her Complaint:

Kathy Heindl, LeBlanc's mother, entered into an agreement with Regions Bank for the purchase of property located at 26451 Baldwin Beach Express in Robertsdale, Alabama ("the Property") in August of 2015. (Doc. 67, PageID. 593). LeBlanc and Heindl then entered into a rental agreement whereby LeBlanc paid Heindl the amount of the mortgage as rent each month and LeBlanc, her husband, and her children lived on the Property with Heindl. (*Id.*; PageID. 591). Regions Bank subsequently proceeded with a non-judicial foreclosure, and MIS, Inc. purchased the Property at the foreclosure sale. (*Id.*; PageID. 593-94).

MIS filed a lawsuit in state court against Kathy Heindl, Allison LeBlanc, and JP LeBlanc for possession of the Property. (*Id.*). On March 25, 2024, MIS, Inc. filed a motion for summary judgment, which the Court granted. (*Id.*). LeBlanc asked the judge how long she and her family had to vacate their home, but the state court judge did not give an exact answer. (*Id.*). MIS submitted an Application for Writ of Possession on June 5, 2024. (*Id.*). A copy of this filing was allegedly not sent to LeBlanc, her mother, or her husband. (*Id.*). Writ of Possession was ordered on June 11, 2024, by the Court Clerk and was conveyed to the Baldwin County Sheriff's Office to be served. (*Id.*). The Sheriff's Office gave LeBlanc no notice before execution of the Writ, nor was LeBlanc informed of any right to appeal the judge's decision or the Writ of Possession. (*Id.;*

---

[2] This report and recommendation will primarily set forth facts pertaining to Herring and Mack as MIS's motion to dismiss has been evaluated in a separate report and recommendation.

PageID. 595). Mr. McGowan, of MIS, texted or left a phone message for LeBlanc that she needed to contact him if she "didn't want something really bad to happen," but she had no idea to what he was referring. (*Id.*).

On the morning of June 20, 2024, deputies from the Baldwin County Sheriff's Office ("BCSO") came onto the Property in riot gear with shields and shotguns drawn by "popping the pin" on a chained and locked gate (*Id.*). They took LeBlanc and her husband out of the house located on the Property in handcuffs and detained them on the back porch while officers with shotguns woke up Heindl, her elderly handicapped mother who was the previous owner of the property, and her 10 and 11-year-old sons. (*Id.*). Herring kept threatening to take them to jail if they did not do exactly what he told them to do. (*Id.*). Herring and other BCSO officers searched the home. (*Id.*). They seized four handguns, one shotgun, and two 22 rifles and said it was for "safekeeping." (*Id.*). Herring refused to allow LeBlanc or her husband to go back to their room to retrieve any of their possessions but did allow LeBlanc to assist her mother in getting dressed and with her wound and ostomy care. (*Id.*). LeBlanc was only able to load up her mother's bedside commode, urinary care equipment, and ostomy supplies before Herring told her to leave. (*Id.*). She was not allowed to retrieve any of her personal belongings from her room, including an ammo box filled with gold and silver, her clothes, shoes, papers, or legal books. (*Id.*). After speaking with her husband, who is not a party to this action, Herring "started shouting orders to have all the vehicles towed and [to] throw our belongings out by the road." (*Id.* at 596).

Herring had Heindl sign a receipt for the guns and the Writ of Possession before they left the property. (*Id.*). He told her she was signing a receipt for the guns but did not

explain the Writ of Possession. (*Id.*). LeBlanc alleges that Heindl has cognitive impairment from a "medical ordeal" and did not know what she was signing, that she explained this to Herring and told him that she had Power of Attorney for Heindl, and that he scoffed and made some kind of comment about her not believing in the system. (*Id.*).

Many of LeBlanc's factual allegations (and conclusions) are controverted by written documents in the public record, and some are supported by the public record. The loan and mortgage documents, as well as the Warranty Deed, show that it was Kathy B. Heindl who owned and mortgaged the Property. (Doc. 32-8, PageID. 297-98; Doc. 13-1, PageID. 114-16; Doc. 13-2, PageID. 118-33). As reflected in a subsequent Foreclosure Deed, Heindl defaulted on the loan, Regions foreclosed on the Property, and then Regions sold the Property at public auction on September 21, 2023 to MIS. (Doc. 13-3, PageID. 135-37). The Property was conveyed to MIS in a Foreclosure Deed dated September 26, 2023, and recorded September 28, 2023, at Instrument No. 2088370 in the Probate Records of Baldwin County, Alabama. (*Id.*). One month later, on October 24, 2023, MIS filed an action for ejectment and declaratory judgment in Baldwin County Circuit Court, 05-CV-2023-901333, against Allison LeBlanc, Kathy Heindl, and J.P. LeBlanc, because they remained in actual possession of the Property. (Doc. 32-1, PageID. 231-34). MIS moved for summary judgment in its favor, and, on April 23, 2024, the state court granted summary judgment in favor of MIS. (Doc. 32-1, PageID. 235-38; Doc. 32-3, PageID. 240). On June 11, 2024, the state court issued a writ of restitution or possession, commanding law enforcement "to restore [MIS] to possession of the land and tenements which [MIS] recovered of [Allison LeBlanc, Kathy Heindl, and J.P.

LeBlanc] in an action of forcible entry and detainer ...." (Doc. 32-4, PageID. 241). Deputy Clarence Herring served Kathy Heindl with the writ on June 20, 2024. (Doc. 32-6, PageID. 242). The state court awarded damages for mesne profits to MIS on July 15, 2024, finding that MIS "obtained fee simple title to the Property via Foreclosure Deed" and that the court's writ of possession "was duly executed." (Doc. 32-6, PageID. 243-44).

Based on these allegations, LeBlanc asserts the following claims against Mack, in his individual and official capacity, and Herring, in his individual capacity:

Count One: Pursuant to 42 U.S.C. § 1983, Violation of Rights Under Color of Law, alleging that "all defendants acted in concert under color of state codes and statutes to deprive the Plaintiff of God-given, Constitutionally protected rights." (Doc. 67, PageID. 600). Specifically, as to Mack and Herring, LeBlanc alleges that they violated her due process rights by not serving "the Writ of Possession as prescribed in the Alabama Sheriff's Handbook, and gave no notice, choosing instead to use excessive force and enter the plaintiff's home with guns drawn." (*Id.*, PageID. 601-02). LeBlanc asserts that the failure of the BCSO to notify her of the Writ of Possession deprived her of the opportunity to contest the Writ of Possession and of the opportunity to comply with the order and vacate the premises voluntarily with her possessions. LeBlanc further alleges that Herring, along with MIS, had her trucks, car, and a covered trailer impounded at Mo's Towing without due process. (*Id.*). LeBlanc also asserts a claim against Mack, under § 1983, for breaching his duty to ensure that due process was met before Herring and BCSO seized her without a warrant.[3] (*Id.*, PageID. 602-03). Finally,

---

[3] LeBlanc also claims that her husband was seized without a warrant. Indeed, throughout her Complaint, she purports to raise claims on behalf of her husband;

LeBlanc asserts a claim, under § 1983, for unlawful search and seizure, in violation of the 4th amendment. (*Id.*, PageID. 603).

Count Two:  Pursuant to 42 U.S.C. § 1985(3), Conspiracy to Interfere with Civil Rights, asserting that unnamed BCSO officers conspired with MIS to separate her and her family from their personal property "based on conjecture that [they] were members of a right-wing, anti-government group." (*Id.*, PageID. 603-04).

Count Three:  42 U.S.C. § 1985 Conspiracy to Commit Deprivation of Equal Protection of the Law of an assumed political group, alleging that unnamed BCSO deprived her of equal protection because they did not like the type of person that they assumed she was. LeBlanc claims that these unnamed BCSO officers "chose not to serve us the Writ of Possession because they wanted an excuse to search our home, thinking that we were right wing extremists." She further claims that "[t]hey tried to justify the raid, extreme force, illegal detention, and illegal search and seizure with 'officer safety.'" (*Id.*, PageID. 604-05).

Count Five: Use of Excessive Force Leading to Deprivation of Livelihood, alleging that unnamed BCSO deputies "entered my home with guns drawn without any reasonable articulable suspicion of a crime and no warrant." (*Id.*, PageID. 605-06).

Count Six: Deprivation of Liberty, alleging that, unnamed BCSO deputies detained her in handcuffs on her porch without a warrant and with no *reasonable* reason to suspect a crime and that Herring kept threatening to take her to jail for no reason. (*Id.,* PageID. 606).

---

however, her husband is not a party to this action. Therefore, all allegations and claims that LeBlanc improperly advances on his behalf are hereby **STRICKEN.**

Based on these claims, LeBlanc seeks compensatory and punitive damages, Herring's termination from the BCSO without severance, and injunctive relief against Sheriff Mack and the BCSO.[4] (*Id.*, PageID. 609).

## II. Standard of Review

Mack and Herring argue that LeBlanc's claims against them are due to be dismissed, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, because LeBlanc has failed to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.... [This standard] asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

In determining whether a claim is stated, the court "must accept the factual allegations in a complaint as true and construe them in the light most favorable to the plaintiff." *Almanza v. United Airlines, Inc.,* 851 F.3d 1060, 1066 (11th Cir. 2017). However, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011). In addition, "'when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.'" *Marquez v. Amazon.com, Inc.,* 69 F.4th 1262, 1269

---

[4] The Court notes that no recovery can be had against the BCSO as it is not a party to this action.

(11th Cir. 2023) (quoting *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1205-06 (11th Cir. 2007)).

A complaint is also "subject to dismissal for failure to state a claim 'when its allegations, on their face, show that an affirmative defense bars recovery on the claim,'" *Douglas v. Yates,* 535 F.3d 1316, 1321 (11th Cir. 2008) (quoting *Cottone v. Jenne,* 326 F.3d 1352, 1357 (11th Cir. 2003)), or "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action," *Marshall Cty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### III. <u>Legal Analysis</u>

Defendants Mack and Herring contend that the claims asserted against them by LeBlanc in the Complaint are due to be dismissed because: 1) the Complaint fails to identify a specific constitutional right that was violated; 2) LeBlanc's Fifth Amendment claim fails because they are not officials of the federal government; 3) they are entitled to qualified immunity; and 4) LeBlanc's claims are barred by the *Rooker-Feldman* doctrine. The Court can summarily dispose of these Defendants' first two grounds.

Contrary to their assertion, construing her *pro se* Complaint liberally, as it must, LeBlanc's Complaint does identify specific constitutional rights that she claims were violated. Specifically, LeBlanc asserts that 1) Mack and Herring violated her due process rights by not serving "the Writ of Possession as prescribed in the <u>Alabama Sheriff's Handbook</u>, and by failing to give advance notice of issuance of the Writ of Possession; 2) Herring violated her Fourteenth Amendment rights by having her trucks, car, and a covered trailer impounded at Mo's Towing without due process; 3) Mack violated her Fourteenth Amendment rights by breaching his duty to ensure that due

process was met before Herring and BCSO seized her without a warrant; 4) Herring violated her Fourth Amendment rights by conducting an unlawful search and seizure; 5) pursuant to 42 U.S.C. § 1985(3), unnamed BCSO officers conspired with MIS to separate her and her family from their personal property "based on conjecture that [they] were members of a right-wing, anti-government group;" 6) unnamed BCSO officers deprived her of equal protection by choosing not to serve the Writ of Possession prior to executing it because they did not like the type of person that they assumed she was in violation of § 1985; 7) BCSO deputies violated the Fourth Amendment by using excessive force when they "entered [her] "home with guns drawn without any reasonable articulable suspicion of a crime and no warrant;" and 8) BCSO deputies violated her Fourth Amendment rights by detaining her in handcuffs on her porch without a warrant and with no reasonable reason to suspect a crime and by Herring threatening to take her to jail for no reason.

As to the second ground asserted by these Defendants in support of dismissal, while LeBlanc mentions the Fifth Amendment in setting forth her claim that she was denied her constitutional rights to due process, this misnomer is not fatal to her claim because the Fifth Amendment is applied to the states through the Fourteenth Amendment.

The Court will now proceed to address the other arguments raised by Defendants Mack and Herring.

## A. Claims Against Sheriff Mack

## 1. Official Capacity Claims

LeBlanc has sued Mack in his official and individual capacities. Any and all claims LeBlanc has asserted against Mack in his official capacity are barred by the Eleventh Amendment. The Eleventh Amendment, which specifically prohibits suits against "the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State," has long been held to apply "equally to suits against a state brought in federal court by citizens of that state." *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998). "The state need not be formally named as a defendant for the amendment to apply; state officials sued in their official capacity are also protected by the amendment." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 166-67 (1985)). "Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).

It is well settled in this circuit that Alabama sheriffs are executive officers of the state and that a suit against a sheriff in his official capacity is the equivalent of a suit against the state. *See Free v. Granger*, 887 F.2d 1552, 1557 (11th Cir. 1989). "[T]he state is considered the real party in interest because an award of damages would be paid by the state." *Carr v. City of Florence*, 916 F.2d 1521, 1524 (11th Cir. 1990). Accordingly, suits against Alabama sheriffs in their official capacities are generally barred by the Eleventh Amendment.

The Supreme Court has recognized three limited exceptions to the rule barring § 1983 actions against state officials sued in their official capacity. The first exception is when a state has waived its Eleventh Amendment sovereign immunity and has

consented to suit in federal court. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985). This exception does not apply here, however, because the State of Alabama has not waived its immunity to suit in § 1983 cases. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978). The Alabama Constitution explicitly states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. The second exception is when Congress has properly abrogated sovereign immunity through its powers under the Fourteenth Amendment; however, such an abrogation has not occurred with respect to § 1983 claims. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55-73 (1996); *Carr*, 916 F.2d at 1525. Lastly, under the doctrine of *Ex parte Young*, the Eleventh Amendment does not bar § 1983 actions against state officials which seek prospective injunctive relief to end continuing violations of federal law. *See Ex parte Young*, 209 U.S. 123, 155-56 (1908); *see also Seminole Tribe of Fla.*, 517 U.S. at 73 (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)); *Summit Med. Assoc. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). As noted in Summit Medical, "[b]ecause of the important interests of federalism and state sovereignty implicated by *Ex parte Young* ... the doctrine is not without limitations." 180 F.3d at 1337. One limitation, which is relevant to this action, is that "the *Ex parte Young* doctrine applies only to ongoing and continuous violations of federal law." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 277-78 (1986)). "[A] plaintiff may not use the doctrine to adjudicate the legality of past conduct." *Id.*

Applying these tenets of law to the instant case, all claims asserted against Sheriff Mack, in his official capacity, are due to be dismissed. Because Alabama sheriffs are executive officers of the state of Alabama, Mack, in his official capacity, is

entitled to Eleventh Amendment immunity from any claims for monetary damages. Accordingly, LeBlanc's claims for monetary damages against Mack in his official capacity are due to be dismissed.[5] Likewise, Mack is entitled to dismissal of any claims asserted by LeBlanc seeking prospective injunctive relief against Mack because he is no longer the Sheriff of Baldwin County.

## 2. <u>Individual Capacity Claims</u>

Careful review of LeBlanc's Complaint, and a liberal construction, reveals that only two possible claims are asserted against Mack: 1) a Fourteenth Amendment claim that he breached his alleged duty to ensure that due process of law was met in connection with notice of and service of the Writ of Possession, and 2) a supervisory liability claim for Herring's and other unnamed deputies' actions in execution of the writ and the Court's order in connection therewith. To show a constitutional violation, a plaintiff must show that, under the facts alleged, the official's conduct violated a constitutional right. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Where a constitutional violation of a supervisor is alleged, the plaintiff must show that either: (1) the supervisor personally participated in the alleged constitutional violation; or (2) there was a causal connection between the actions of the supervisor and the alleged violation. *See Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Mack asserts that Plaintiff has alleged neither.

---

[5]  By definition, only "persons" may be sued for a constitutional deprivation under § 1983. 42 U.S.C. § 1983 (1994). In *Will*, 491 U.S. at 71, the Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" with regard to claims for damages. Therefore, Sheriff Mack, in his official capacity, is not subject to suit for monetary damages under § 1983 for this reason as well.

In her Complaint, LeBlanc does not allege any personal participation by Mack in the actions that she alleges support her claims. Her only discussion of Mack comes in the acknowledgment of his position as Sheriff of Baldwin County at the time the Writ of Possession was executed. (Doc. 67, PageID. 602-03). She specifically alleges: "As the Chief 'policymaker' for the Baldwin County Sheriff's Office, Sheriff Mack set or influenced the customs, policies, practices, and/or procedures followed by his deputies." (*Id.*, PageID. 603). She then alleges that "[u]nder Mack's Supervision [sic], Herring and BCSO deputies ...." LeBlanc simply does not allege any personal interactions with Mack in her Complaint. (*See generally* Doc. 67.) Because she does not allege any personal participation by Mack in the conduct that she claims violated her constitutional rights, the only way her claims against him could remain is under a theory of supervisory liability. However, she fails to sufficiently allege any plausible facts that would support a claim of supervisory liability against Mack.

"Supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360. A plaintiff can establish a causal relationship between a supervisory official's acts and the acts of his subordinates in one of the three following ways: (1) the supervisor had notice of a widespread history of abuse which he neglected to correct, *Gonzales v. Reno*, 325 F.3d, 1228, 1234 (11th Cir. 2003); *Cottone*, 326 F.3d at 1360; (2) the supervisor implemented a custom or policy that resulted in deliberate indifference to constitutional rights, *Gonzales*, 325 F.3d at 1234–35; *Cottone*, 326 F.3d at 1360; or (3) the facts support "the inference that the

supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Gonzalez*, 325 F.3d at 1235.

The Complaint does not allege a history of widespread abuse in serving writs of possession throughout the BCSO, nor does it allege that Mack had notice of any such pattern of widespread abuse. Nor does LeBlanc allege a specific custom or policy implemented by Mack that resulted in deliberate indifference to her constitutional rights. Moreover, under this theory of liability, "[a] pattern of similar constitutional violations ... is 'ordinarily necessary.'" *Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). Plaintiff has not alleged any specific unconstitutional policy or custom, nor any pattern of similar violations, nor any showing that Mack had subjective knowledge of such a policy or custom posing a risk of serious harm. Finally, LeBlanc's Complaint lacks any allegations supporting a finding that Mack directed any of the deputies to act unlawfully or knew that any of the deputies would act unlawfully and failed to stop them from doing so.

The common denominator in each of these three scenarios that could support supervisory liability is notice. In sum, to be liable as a supervisor, Mack must have had notice that a constitutional violation would occur and failed to prevent that violation. Leblanc has not alleged any facts supporting a claim that Mack had notice that a constitutional violation would occur or that her constitutional rights would possibly be infringed. Therefore, her claims against Mack for supervisory liability fail, and because she makes no allegations of personal participation by Mack, his motion to dismiss all claims asserted against him in his individual capacity is due to be granted.

**B. Claims Against Deputy Sheriff Herring**

In her Complaint, LeBlanc has asserted claims against Herring in his individual capacity only. She alleges that, on June 20, 2024, unnamed BCSO deputies[6] served the writ of possession on her mother and took possession of the property on behalf of MIS pursuant to the order of the Baldwin County circuit court commanding them to do so. She alleges that they did so "by 'popping the pin' on a chained and locked gate in riot gear with shields and shotguns drawn." (Doc. 67, PageID. 595). She further alleges "they" took her and her husband out of the house (i.e., the Property) in handcuffs and detained them without cause and without a warrant on the back porch. As to Herring, she alleges that he "kept threatening to take us to jail if we didn't do exactly what he told us to do" and that he and other deputies "searched our home" and "seized four handguns, one shotgun, and two 22 rifles." (*Id*.). She further alleges that Herring refused to let her go back to her room to retrieve her possessions. According to LeBlanc, when her husband (who is not a party to this action) asked Herring why Herring had a problem with him, "Herring started shouting orders to have all the vehicles towed and throw our belongings out by the road." (*Id*. at 596). She avers that she was only able to load up her mother's medical and healthcare items before Herring told her she had to leave. (*Id*.). She claims that Herring had her mother sign the writ of possession and a receipt for the guns. LeBlanc alleges that she told Herring that she had a power of attorney for her mother and "he scoffed and made some kind of comment about me not believing in the system." (*Id*.).

---

[6] Neither the BCSO nor any other officers are defendants in this action.

Based on these facts, Leblanc has made a claim against Herring, under § 1983, for having her trucks, a car, and a covered trailed impounded without due process. (*Id*. at 602). She further asserts a claim, under §1983, for violation of her Fourth Amendment rights based upon her allegations that Herring and other unnamed BCSO deputies seized her without a warrant, placed her in handcuffs "effectuating an arrest without probable cause," "committed assault and battery by patting [her] down without [her] consent and without reasonable suspicion that [she was] armed, unlawfully searched [her] home, and seized our guns."

She has purportedly asserted claims against Herring under § 1985 in Counts Two and Three by naming him in the header of these counts, but she makes no claims directly against him in the body of the claims. Also, she has brought two counts, Counts Five and Six, naming Herring in the header and seemingly alleging violations of the Fourth Amendment. In Count Five, LeBlanc does not mention Herring in the body of the claim or make any specific claims against him. In Count Six, in which she alleges that BCSO deputies deprived her of liberty by detaining her in handcuffs on her porch without a warrant and with no reasonable reason to suspect a crime, she only states that "Herring kept threatening to take us to jail for no reason."

## 1. Claims Under 42 U.S.C. § 1983

To establish a claim under 42 U.S.C. § 1983, LeBlanc "must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting under the color of state law." *Martinez v. Burns*, 459 F. App'x 849, 850-851 (11th Cir. 2012) (citing *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005)). There is no dispute that Herring was acting under color of state law when he, along with other

deputies, executed the writ of possession. Thus, to avoid dismissal of her § 1983 claims at this stage of the proceedings, Plaintiff must have alleged facts showing that Herring, personally, acted to deprive her of a constitutional right. Herring asserts that she has not done so and further asserts that he is protected by qualified immunity.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)). As set forth in Herring's brief in support of his motion, the allegations and evidence show that Herring was acting within his discretionary authority at all times LeBlanc alleges he violated her constitutional rights, and Plaintiff does not dispute this. (Doc. 82, PageID. 768-69; Doc. 84). "Once discretionary authority is established, the burden then shifts to the plaintiff to show that qualified immunity should not apply." *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291 (11th Cir. 2009). "To overcome qualified immunity, the plaintiff must satisfy a two-prong test; [she] must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1264 (11th Cir. 2004). "A qualified-immunity inquiry can begin with either prong...." *Morris v. Town of Lexington*, 748 F.3d 1316, 1322 (11th Cir. 2014). Thus, Herring is entitled to qualified immunity *unless* LeBlanc can show that his conduct violated a clearly established statutory or constitutional right of which a reasonable person would have known. *See Belcher v. City of Foley, Ala.,* 30 F.3d 1390, 1395 (11th Cir. 1994).

Construing her Complaint liberally, LeBlanc has purportedly alleged two constitutional violations by Herring: 1) he violated her constitutional rights by having her trucks, a car, and a covered trailed impounded and by refusing to let her go back to her room to retrieve her possessions, thereby depriving her of property without due process, and 2) he violated her Fourth Amendment rights when he and other officers entered the Property in riot gear with guns drawn; when he threatened to take her and her husband to jail if they didn't do exactly what he told them to do; and when he put her in handcuffs "effectuating an arrest without probable cause, committed assault and battery by patting [her] down without [her] consent and without reasonable suspicion that [she was] armed, unlawfully searched her home and seized [her] guns violating [her] 4th amendment right to be free from unreasonable search and seizure." (Doc. 67, PageID. 595-96, 603). She further asserts that "Herring searched [her] car without [her] permission and without a warrant." (*Id.* at 603).

**a. Due process claim**

Simply stated, LeBlanc cannot set forth a constitutional claim for violation of her due process rights in connection with the impoundment of vehicles on the Property or her not being able to retrieve possessions from her room because she was given all process she was due in connection with the issuance of the writ of possession and, moreover, the issuing state court found that the writ was "duly executed upon by the Baldwin County Sheriff's office." The state court granted summary judgment in MIS's favor on its ejectment and declaratory judgment claims against LeBlanc, after a hearing at which LeBlanc was present and allowed to speak. (Docs. 32-2, 32-3). The state court record and Plaintiff's allegations show that LeBlanc knew prior to execution of the writ

that she and her family were required to vacate the Property. Indeed, summary judgment was entered against LeBlanc on April 23, 2024, and the writ was not executed until June 20, 2024. Later, in its order awarding mesne profits to MIS, the Baldwin County court concluded that LeBlanc "***unlawfully*** occupied the Property" from September 26, 2023 through June 20, 2024. (Doc. 32-6 (emphasis added)). Most importantly, for purposes of the instant action, the state court explicitly determined that its writ of possession "was duly executed upon by the Baldwin County Sheriff's office." (Doc. 32-6, PageID. 243-44). Herring was simply carrying out the state court's order by removing LeBlanc from the Property. LeBlanc had nine months to remove her possessions from the Property herself but instead chose to "unlawfully" occupy the Property. Thus, she cannot set forth a constitutional due process claim against Herring.

**b. Fourth Amendment claim**

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. LeBlanc alleges that Herring violated her Fourth Amendment rights when he and other officers entered the Property in riot gear with guns drawn; when he threatened to take her and her husband to jail if they didn't do exactly what he told them to do; and when he put her in handcuffs "effectuating an arrest without probable cause, committed assault and battery by patting [her] down without [her] consent and without reasonable suspicion that [she was] armed, unlawfully searched her home and seized [her] guns violating [her] 4th amendment right to be free from unreasonable search and seizure." (Doc. 67, PageID. 595-96, 603). She further asserts that "Herring searched [her] car without [her]

permission and without a warrant." (*Id.* at 603). In sum, she has alleged that Herring's actions in seizing her by placing her in handcuffs and searching her home and car were unreasonable and unjustified under the Fourth Amendment.

"As a general rule, the Fourth Amendment ... prohibits state actors from making searches or seizures of the person in the absence of probable cause." *United States v. Dunn*, 345 F.3d 1285, 1288 (11th Cir. 2003) (citing *United States v*. Sharpe, 470 U.S. 675, 690 (1985) (noting "the general rule requiring probable cause to make Fourth Amendment 'seizures' reasonable") (internal quotation and citation omitted)). However, in *Terry v. Ohio,* the Supreme Court articulated a now well-known "exception to the probable cause requirement holding that minimally intrusive searches and seizures of the person are permissible when a law enforcement officer has an objectively reasonable suspicion that 'criminal activity may be afoot.'" *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). *Terry* stops, essentially brief detentions for further investigation, "must be justified by reasonable and articulable suspicion." *Harris v. Byner*, Civ. A. No., 2:12cv591-MHT, 2014 WL 129040, at *2 (M.D. Ala. Jan. 14, 2014) (citing *United States v. Hastamorir*, 881 F.2d 1551, 1556 (11th Cir. 1989)). Based on the allegations of the Complaint, it appears that the seizure of LeBlanc can best be characterized as a *Terry* stop as there is no allegation that she was arrested or charged with a crime on the relevant date. "It is well settled that, under the Fourth Amendment, '[t]he scope of a detention must be carefully tailored to its underlying justification' and that the 'investigatory methods employed [during a detention] should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of

time.'" *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1306 (11th Cir. 2006) (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)).

Based on the Eleventh Circuit's decision in *Gray* and the Supreme Court's decisions in *Terry* and its progeny, this Court agrees with the *Harris* court that "[t]he use of handcuffs in a *Terry* stop without any justification is a Fourth Amendment violation." *Harris*, 2014 WL 129040, at * 3. Liberally construing her Complaint, as this Court must, and considering all factual allegations in LeBlanc's favor, as this Court must at this juncture in the proceedings, the Court finds that LeBlanc, who has alleged she was detained in handcuffs and patted down without probable cause or any other articulated reason, has set forth facts which plausibly support a finding that her constitutional rights were violated by Herring and other unnamed BCSO deputies. *See, e.g., Furman v. Dekalb Cnty. Sheriff's Dept.*, Civ. A. File No. 1:14-CV- 03253-AT-JFK, 2016 WL 4361530, at *5- (N.D. Ga. Apr. 4, 2016) (holding that *pro se* complaint that alleged, *inter alia,* that a group of a dozen or more deputies evicted Plaintiff by a deputy kicking the back door in and, with his hand on his gun, telling Plaintiff to drop everything and show her hands, and then ordering her to get her clothes on and leave was sufficient to plausibly show that her constitutional rights were violated by the manner in which the eviction itself was carried out). Likewise, while LeBlanc's claim for illegal search of the Property is not viable because her mother did not legally own the Property and LeBlanc had no legal right to be in the home at the time Herring and the other deputies allegedly searched the home, her claim for illegal search of her vehicle does state a claim since she alleges that Herring had no warrant or probable cause to search her vehicle. *See Carroll v. United States*, 267 U.S. 132, 149 (1925).

Having determined that Plaintiff has plausibly alleged a Fourth Amendment constitutional claim for unreasonable search and seizure of her person and unreasonable search of her vehicle, the Court now must address whether the right was clearly established. In *Lewis v. City of West Palm Beach*, the Eleventh Circuit stated:

> A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

561 F.3d1288, 1291-92 (11th Cir. 2009). Here, as set forth above, case law from the Supreme Court and the Eleventh Circuit had clearly established prior to June 20, 2024, that detention of a person without probable cause or an objectively reasonable suspicion that 'criminal activity may be afoot'" violated the Fourth Amendment, as did searching a vehicle without a warrant or probable cause. Accordingly, Herring is not entitled to qualified immunity as to LeBlanc's claims based upon a violation of her Fourth Amendment rights at this juncture of the proceedings.

Defendants argue that LeBlanc's claims are barred by the *Rooker-Feldman* doctrine. Specifically, they argue that, because this action and the state court action "center[ ] around the possession of the property at issue," both actions are "inextricably intertwined." (Doc. 82, PageID. 784). To the extent that LeBlanc has raised claims challenging the issuance or propriety of the writ of possession and/or the removal of her property from the premises, the *Rooker-Feldman* doctrine applies and, thus, bars any such claims. However, the remaining claim here, that Herring violated her Fourth Amendment right to be free from unreasonable search and seizure, is not a challenge to the writ of possession or order of eviction. Instead, this claim is a challenge to "the

manner in which the eviction itself was carried out" by Herring. *See Christophe v. Morris,* 198 F. App'x 818, 825-26 (11th Cir. 2006). This Court agrees with the *Christophe* court that her Fourth Amendment claim against Herring is not inextricably intertwined with the state court's rulings in the action brought against her by MIS seeking possession of the Property. *Id.* Herring was not a party to that action; therefore, she could not have raised her claim for unreasonable search and seizure in the state court action. Accordingly, the *Rooker-Feldman* doctrine does not bar her Fourth Amendment claim against Herring.

**2. Section 1985 Claims, Excessive Force Claim, and Deprivation of Liberty Claim**

      Count Two of LeBlanc's Complaint alleges a claim for conspiracy to interfere with civil rights pursuant to 42 U.S.C. § 1985(3) purportedly against all Defendants; however, LeBlanc makes no specific allegations against Herring in this claim. Count Three asserts a claim for "Conspiracy to Commit Deprivation of Equal Protection of the Law of an assumed political group" pursuant to 42 U.S.C. § 1985 against Mack and Herring. Again, LeBlanc makes no specific allegations against Herring in the body of this count. In Count Four, which LeBlanc purports to assert against Mack and Herring, she claims that "BCSO deputies" exercised excessive force by "enter[ing] [her] home with guns drawn without any reasonable articulable suspicion of a crime and no warrant." She does not make any specific allegations against Herring in this Count. Because LeBlanc makes no specific claims against Herring in the bodies of these Counts, each of them is due to be dismissed as to Herring.

      Finally, in Count Six, which is asserted against Mack and Herring, LeBlanc alleges that "BCSO deputies" deprived her of liberty and that "Herring kept threatening

to take us to jail for no reason." To the extent that this count states a claim against Herring, the Court finds that it is subsumed into the §1983 claim in Count One and recommends dismissal of this count as well.

## IV. <u>CONCLUSION</u>

Upon consideration of all relevant material, it is **RECOMMENDED** that the motion to dismiss filed by Defendants Sheriff Huey Mack and Deputy Clarence Herring (Doc. 81) be **GRANTED, in part,** and **DENIED, in part,** as follows:

1. The motion to dismiss as to all claims asserted against Sheriff Mack in his official capacity be **GRANTED** and these claims be **DISMISSED with prejudice;**

2. The motion to dismiss as to all claims asserted against Sheriff Mack in his individual capacity be **GRANTED** and these claims be **DISMISSED without prejudice;**

3. The motion to dismiss as to Counts Two, Three, Five, and Six be **GRANTED** and these claims be **DISMISSED without prejudice;**

4. The motion to dismiss as to the § 1983 claims asserted against Herring in Count One which are based upon an alleged violation of LeBlanc's Fourteenth Amendment due process rights be **GRANTED** and these claims be **DISMISSED with prejudice;** and

5. The motion to dismiss as to the § 1983 claims asserted against Herring in Count One which are based upon an alleged violation of LeBlanc's Fourth Amendment rights to be free from an unreasonable search and seizure of her person and free from an unreasonable search of her vehicle be **DENIED.**

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen. LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 12th day of December, 2025.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**