IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ALLISON KATHLEEN LEBLANC,                    )
                                             )
            Plaintiff,                       )
                                             )
vs.                                          )        CIV A. NO. 24-0209-KD-MU
                                             )
MIS INC., *et al.,*                          )
                                             )
            Defendants.                      )

## REPORT AND RECOMMENDATION

Plaintiff Allison Kathleen LeBlanc, proceeding *pro se*, filed an Amended Second Amended Complaint against several defendants, including MIS, Inc., on April 4, 2025. (Doc. 67). This action was referred to the undersigned, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the Court on Defendant MIS, Inc.'s motion to dismiss (Doc. 75), Plaintiff's response thereto (Doc. 78), and MIS's reply. (Doc. 80).[1] For the reasons stated below, it is recommended that MIS's motion to dismiss be granted.

## I. Factual Allegations/Uncontroverted Facts[2]

On April 4, 2025, Allison-Kathleen LeBlanc filed her Amended Second Amended Complaint, which will be referred to as "the Complaint" for brevity sake and because it is

---

[1] MIS has also filed a motion to strike the portions of LeBlanc's response to its motion in which she alleges that MIS made false claims against her for trespassing and had her falsely arrested. (Doc. 79). Because those claims are immaterial to the instant motion and for the additional reasons set forth by MIS, the undersigned Magistrate Judge recommends that MIS's motion to strike (Doc. 79) be **GRANTED.**

[2] For consideration of this motion to dismiss, Plaintiff's factual allegations have been accepted as true and viewed in the light most favorable to Plaintiff. *See McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

now the operative complaint, asserting claims against Defendants MIS, Inc., Deputy Sheriff Clarence Herring, and Baldwin County Sheriff Huey Hoss Mack for "violations of [her] civil rights."[3] (Doc. 67, PageID. 591). Leblanc sets forth the following **relevant** allegations in support of her claims that MIS violated her constitutionally protected rights and unlawfully damaged, stole, or destroyed her personal property:

Kathy Heindl, LeBlanc's mother, entered into an agreement with Regions Bank for the purchase of property located at 26451 Baldwin Beach Express in Robertsdale, Alabama ("the property") in August of 2015. (Doc. 67, PageID. 593). LeBlanc and Heindl then entered into a rental agreement whereby LeBlanc paid her the amount of the mortgage as rent each month and LeBlanc, her husband, and her children lived on the property. (*Id.*; PageID. 591). Regions Bank subsequently proceeded with a non-judicial foreclosure. (*Id.*; PageID. 593). LeBlanc filed a lawsuit against Regions Bank and filed a lis pendens with the Baldwin County Probate Court. (*Id.*). MIS, Inc. bought a "fraudulent" foreclosure deed from Regions Bank who (according to LeBlanc) did not own the mortgage or note. (*Id.*; PageID. 594). MIS filed a lawsuit in state court against Kathy Heindl, Allison LeBlanc, and JP LeBlanc for possession of the property. (*Id.*). On March 25, 2024, MIS, Inc. filed a motion for summary judgment, which was granted by the Court. (*Id.*). Leblanc asked the judge how long she and her family had to vacate their home, but an exact answer was never given. (*Id.*). MIS did not inform LeBlanc of her "Constitutional right to Trial By Jury," and the judge did not enter a Finding of Facts or Conclusions of Law, making appeal impossible in LeBlanc's view. (*Id.*).

---

[3] This report and recommendation will only set forth facts pertaining to Herring and Mack as necessary to assess the claims against MIS. Herring and Mack's motion to dismiss will be evaluated in a separate report and recommendation.

MIS submitted an Application for Writ of Possession on June 5, 2024. (*Id.*). A copy of this filing was not sent to LeBlanc, her mother or her husband. (*Id.*). Writ of Possession was ordered on June 11, 2024, by the Court Clerk and was conveyed to the Baldwin County Sheriff's Office to be served. (*Id.*). No advance notice was given by the Sheriff's office prior to execution of the Writ, nor was Leblanc informed of any right to appeal the judge's decision or the Writ of Possession. (*Id.; PageID. 595*). Mr. McGowan, of MIS, texted or left a phone message for LeBlanc that she needed to contact him if she "didn't want something really bad to happen," but she had no idea to what he was referring. (*Id.*).

On the morning of June 20, 2024, deputies from the Baldwin County Sheriff's Office ("BCSO") came onto the property in riot gear with shields and shotguns drawn by "popping the pin" on a chained and locked gate**.** (*Id.*). They took LeBlanc and her husband out of the house located on the property in handcuffs and detained then on the back porch while officers with shotguns woke up Heindl, her elderly handicapped mother who was the previous owner of the property, and her 10 and 11-year-old sons. (*Id.*). Herring kept threatening to take them to jail if they didn't do exactly what he told us to do. (*Id.*). Herring and BCSO officers searched the home and seized four handguns, one shotgun, and two 22 rifles. (*Id.*). They said it was for "safekeeping." (*Id.*). Herring refused to allow LeBlanc or her husband to go back to their room to retrieve any of their possessions. (*Id.*). LeBlanc's husband, who is not a party to this action, remained in handcuffs for over an hour until he was escorted off the property. (*Id.*; PageID. 596). He spoke with Herring who agreed to have their trucks, trailers, tractors, and belongings placed on the adjacent acre that they rent from their neighbor, but when her husband

asked Herring why he had a problem with him, Herring started shouting orders to have all the vehicles towed and throw our belongings out by the road. (*Id.*). She was only able to load up her mother's bedside commode, urinary care equipment, and ostomy supplies before Herring told her to leave. (*Id.*). She was not allowed to retrieve any of her personal belongings from her room, including an ammo box filled with gold and silver, her clothes, shoes, papers, or legal books. (*Id.*).

Herring had Heindl sign a receipt for the guns and the Writ of Possession before they left the property. (*Id.*). He told her she was signing a receipt for the guns but did not explain the Writ of Possession. (*Id.*). LeBlanc alleges that Heindl has cognitive impairment from her medical ordeal and did not know what she was signing, that she explained this to Herring and told him that she has Power of Attorney for her, and that he scoffed and made some kind of comment about her not believing in the system. (*Id.*).

They left their home and everything they owned while agents of MIS threw all their property from inside the house onto the front ditch bank along the expressway in the rain, including Heindl's medications and medical supplies, checkbooks that were then stolen, and private medical information. (*Id.*). When LeBlanc and her husband returned that evening to gathering some of their belongings, they asked the MIS agents to be careful with their things, and they said they were calling the Sheriff to arrest us, so they left. (*Id.*; Page ID. 597). Friends attempted to guard their property, but their belongings were "stolen" from the side of the road through the night. (*Id.*).

The next day, Mr. Tyndall, a partner at MIS, filed a false report stating that LeBlanc had trespassed on the property to retrieve her ducks and horse. (*Id.*). She was arrested a few weeks later while trying to prepare the land they rent from their neighbor

to store their belongings and trucks. (*Id.*). Neither MIS officers nor any of the subpoenaed BCSO deputies showed up for court, and she was found innocent. (*Id.*).

As ordered by Herring, MIS had their trucks, cars, and a covered trailer towed by Mo's towing. Mo's agreed within days to return their property as soon as they had secured a place to store them. MIS refused to allow LeBlanc to remove her remaining property, even though the barn, carport, schoolhouse, sheds, and the porches were still filled with LeBlanc's personal property. After the Court denied her request for a temporary restraining order to prevent the destruction of her belongings, MIS tore down the sheds; gutted the barn; removed or destroyed a work trailer, fishing boat, and E-350 camper truck; removed all of her tools, Craftsman tool boxes, propane tanks, generators, and stored fuel; bulldozed over 30 fruit trees, shade trees, and shrubs; destroyed 10 raised garden beds; and destroyed the playground that her husband and sons built together starting from the time they were 5 and 6 years old. (*Id.*).

Many of LeBlanc's factual allegations (and conclusions) are controverted by written documents in the public record and some are supported by the public record. The loan and mortgage documents, as well as the Warranty Deed, show that it was Kathy B. Heindl who owned and mortgaged the Property. (Doc. 32-8, PageID. 297-98; Doc. 13-1, PageID. 114-16; Doc. 13-2, PageID. 118-33). As reflected in a subsequent Foreclosure Deed, Heindl defaulted on the loan, Regions foreclosed on the Property, and then Regions sold the Property at public auction on September 21, 2023 to Defendant MIS, Inc. (Doc. 13-3, PageID. 135-37). The Property was conveyed to MIS via the Foreclosure Deed dated September 26, 2023, and recorded September 28, 2023, at Instrument No. 2088370 in the Probate Records of Baldwin County, Alabama.

(*Id*.). One month later, on October 24, 2023, MIS filed an action for ejectment and declaratory judgment in Baldwin County Circuit Court, 05-CV-2023-901333, against Allison Leblanc, Kathy Heindl, and J.P. Leblanc, because they remained in actual possession of the Property. (Doc. 32-1, PageID. 231-34). MIS moved for summary judgment in its favor, and, on April 23, 2024, the state court granted summary judgment in favor of MIS. (Doc. 32-1, PageID. 235-38; Doc. 32-3, PageID. 240). On June 11, 2024, the state court issued a writ of restitution or possession, commanding law enforcement "to restore [MIS] to possession of the land and tenements which [MIS] recovered of [Allison Leblanc, Kathy Heindl, and J.P. Leblanc] in an action of forcible entry and detainer ...." (Doc. 32-4, PageID. 241). Deputy Clarence Herring served Kathy Heindl with the writ on June 20, 2024. (Doc. 32-6, PageID. 242). The state court awarded damages for mesne profits to MIS on July 15, 2024, finding that MIS "obtained fee simple title to the Property via Foreclosure Deed" and that the court's writ of possession "was duly executed." (Doc. 32-6, PageID. 243-44).

Based on these allegations, LeBlanc asserts the following claims against MIS:

Count One: Pursuant to 42 U.S.C. § 1983, Violation of Rights Under Color of Law, alleging that "all defendants acted in concert under color of state codes and statutes to deprive the Plaintiff of God-given, Constitutionally protected rights." (Doc. 67, PageID. 600). Specifically, LeBlanc alleges that MIS violated her due process rights in Baldwin County Circuit Court "by using an unfair court process that violated federal law and court rules" and by not serving her with the Writ of Possession. (*Id.*, PageID. 601). LeBlanc further alleges that MIS violated her due process rights by having her trucks,

car, and a covered trailer impounded at Mo's Towing and refusing to allow them access on the property to retrieve remaining items. (*Id.*).

Count Two:  Pursuant to 42 U.S.C. § 1985(3), Conspiracy to Interfere with Civil Rights, asserting that MIS conspired with BCSO officers to separate her and her family from their personal property "based on conjecture that [they] were members of a right-wing, anti-government group." (*Id.*, PageID. 603-04).

Count Nine:  Replevin, alleging that MIS has wrongfully taken possession of certain personal property that remains on the property, has refused to return the personal property, and is attempting the sell the personal property, along with the house and land. (*Id.*, PageID. 607).

Count Ten: Conversion, alleging that she was the lawful owner of all of the personal property in the house, the carport, the storage buildings, the schoolhouse, the barn, and on the grounds of the property; that MIS took possession of her personal property without her consent when MIS took possession of the real property; and that MIS has refused her repeated requests for the return of her property. (*Id.*, PageID. 607-08).

Count Eleven: Destruction of Property, alleging that, on the day of the eviction, agents of MIS acted with reckless disregard for her personal property; thereby causing the destruction of 90% of her personal property. (*Id.*, PageID. 608-09).

Based on these claims, as to MIS, LeBlanc seeks $1,200,000 in compensatory damages for the conversion and/or destruction of her personal property; compensatory damages for all past and future mental suffering and emotional distress she has suffered; punitive damages; a writ of replevin ordering MIS to immediately return the

"Schoolhouse" (a 14'x40' lofted cabin) and its contents, the rocking chairs on the porch of the house, the dog kennels, and any other property it is retaining; and "a 10" Dairy Queen Oreo Blizzard Cake to replace the one eaten by MIS, Inc." (*Id.*, PageID. 609).

## II. Standard of Review

MIS argues that LeBlanc's claims against it are due to be dismissed, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, because she has failed to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.... [This standard] asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. In determining whether a claim is stated, the court "must accept the factual allegations in a complaint as true and construe them in the light most favorable to the plaintiff." *Almanza v. United Airlines, Inc.,* 851 F.3d 1060, 1066 (11th Cir. 2017). However, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011). In addition, "'when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.'" *Marquez v. Amazon.com, Inc.,* 69 F.4th 1262, 1269 (11th Cir. 2023) (quoting *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1205-06 (11th Cir. 2007)).

A complaint is also "subject to dismissal for failure to state a claim 'when its allegations, on their face, show that an affirmative defense bars recovery on the claim,'"

*Douglas v. Yates,* 535 F.3d 1316, 1321 (11th Cir. 2008) (quoting *Cottone v. Jenne,* 326

F.3d 1352, 1357 (11th Cir. 2003)), or "when, on the basis of a dispositive issue of law,

no construction of the factual allegations will support the cause of action," *Marshall Cty.*

*Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

### III.  <u>Legal Analysis</u>

MIS contends that the claims asserted against it by LeBlanc in the Complaint are

due to be dismissed because: 1) her Complaint is an impermissible shotgun pleading in

violation of Rule 8 of the Federal Rules of Civil Procedure; 2) her claims are barred by

the doctrine of issue preclusion; 3) her § 1983 claim fails because MIS is not a state

actor; and 4) her § 1985(3) claim fails because she is not a member of a protected

class. (Doc. 75, PageID. 640-48). In the alternative, MIS argues that LeBlanc lacks

standing to challenge how the eviction occurred or was noticed. (*Id.*, PageID. 648-49).

The Court will discuss how each of these defenses applies, if at all, to Plaintiff's claims

asserted against MIS below.

### A. <u>Shotgun Pleading</u>

MIS contends that LeBlanc's Complaint fails to put MIS on notice of its allegedly

wrongful conduct and, therefore, does not meet the pleading requirements of Rule 8 of

the Federal Rules of Civil Procedure. *See, e.g., Carvel v. Godley,* 404 F. App'x 359, 361

(11th Cir. 2010) (affirming the district court's dismissal with prejudice where the shotgun

pleading "force[d] the district court and the defendant to rummage through page after

page of facts and conclusions to make independent determinations regarding what

allegations, if any, fit with each claim, if any"). However, District Judge DuBose, in

reviewing the Complaint in connection with the motion to strike the Complaint filed by

Defendants Mack and Herring, noted that LeBlanc complied with this Court's earlier instructions by doing the following:

> She pled with separately numbered paragraphs. Sections I through VI, include among others, a factual background section, a statement of jurisdiction and venue, and a section clarifying that she is the only plaintiff and Defendants MIS, Inc., Mack, and Herring are the only defendants. LeBlanc then separated her claims against the Defendants into eleven separately numbered Counts, which explain not only the claim but also identifies the defendant or defendants against whom the claim is alleged. LeBlanc did not incorporate by reference any prior paragraphs but instead set out a statement of the facts relevant to the claim.

(Doc. 77, PageID. 737). Taking into account LeBlanc's status as a *pro se* litigant, the Court finds that the Complaint provides MIS more than adequate notice of the claims she is asserting against it and is not a shotgun pleading. Therefore, the Complaint is not subject to dismissal on this ground.

## B. Section 1983 Claim

In Count One of her Complaint, LeBlanc alleges that "all defendants acted in concert under color of state codes and statutes to deprive the Plaintiff of God-given, Constitutionally protected rights." (Doc. 67, PageID. 600). Specifically, LeBlanc alleges that MIS violated her due process rights[4] in Baldwin County Circuit Court "by using an unfair court process that violated federal law and court rules" and by not serving her with the Writ of Possession. (*Id.*, PageID. 601). LeBlanc further alleges that MIS violated her due process rights by having her trucks, car, and a covered trailer impounded at

---

[4] Although LeBlanc cites and refers to the 5th Amendment in support of her due process claims, her allegations show that she is actually proceeding under the 14th Amendment's due process clause, which states: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV.

Mo's Towing and refusing to allow her access to the property to retrieve remaining items. (*Id.*). Based on these allegations, LeBlanc claims that she is entitled to recover under § 1983 for these constitutional violations.

**1. State Actor**

To set forth a claim under § 1983, LeBlanc must prove that MIS, a private company, was a state actor in connection with the conduct ascribed to it in her allegations. State action is "present in the exercise by a private entity of powers traditionally exclusively reserved to the State." *Jackson v. Metropolitan Edison Co*., 419 U.S. 345, 352 (1974). "Supreme Court precedent has solidified three situations where private entities can be considered state actors:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ('State Compulsion test'); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ('public function test'); or (3) the State had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise ('nexus/joint action test').

*Charles v. Johnson*, 18 F.4th 686, 694 (11th Cir. 2021) (quoting *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (quotations and citations omitted)).

In the instant action, MIS was clearly not acting as a state actor in connection with the impoundment of LeBlanc's vehicles or for its alleged refusal to allow her access to its property as these were purely private actions of the owner of real property. Thus, the question presented is whether MIS acted as a state actor in connection with LeBlanc's claim that it violated her due process rights when it sought the Court's issuance of the writ of possession and, concomitantly, the sheriff's execution of the writ.

The Court finds that the Eleventh Circuit's unpublished opinion in *Hammer v. Bank of America*, 589 F. App'x 516, 517 (11th Cir. 2015), guides its decision on this issue. The facts in *Hammer* are similar to those presented here. Invoking § 1983, the Hammers, leaseholders in real property, "complained that their civil rights were violated in the legal proceedings that resulted in the [Defendant] Bank obtaining a writ of possession...."[5] *Id.* at 516. The Eleventh Circuit held that "[t]he district court did not err by dismissing the Hammers' amended complaint because they failed to establish that Bank of America was a state actor." In *Hammer,* the Court described the facts as follows:

> When Bank of America applied for the Sheriff to execute the writ of possession, the Hammers filed affidavits that stayed the execution. The Hammers argue that they were denied due process because their affidavits were struck *ex parte* on the motion of the Bank, but the Hammers' complaint alleged that the district court held a hearing on the motion before it struck the affidavits. Although the Hammers failed to appear because they purportedly did not receive notice of the hearing, *the Hammers had already been given multiple opportunities to be heard on their claim to the property. The Hammers' complaint alleged that they had received notice of and had objected to the motion of the bank for a writ of possession*; the state court stayed the motion and ordered the bank and the Hammers to mediate their dispute, but that mediation was unsuccessful; and after the state court awarded a writ of possession to the bank, the Hammers appealed.

*Id.* (internal citations omitted; emphasis added). First, the Eleventh Circuit, finding no error in the district court's conclusion that the Bank was not a state actor, noted that "[t]he use of the state courts by Bank of America to seize its property did not transform it into a state actor." *Id.* (citing *Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992)

---

[5] Like LeBlanc, the Hammers also asserted state law claims against the Bank.

("Use of the courts by private parties does not constitute an act under color of state law."). The Eleventh Circuit also concluded that, under the facts of that case, "Bank of America did not unilaterally deprive the Hammers of a property right without due process."

In the instant case, LeBlanc's allegations and the state court record show that Regions foreclosed on the Property, and then Regions sold the Property at public auction on September 21, 2023 to MIS. (Doc. 13-3, PageID. 135-37). The Property was conveyed to MIS in a Foreclosure Deed dated September 26, 2023, and recorded September 28, 2023, at Instrument No. 2088370 in the Probate Records of Baldwin County, Alabama. (*Id*.). One month later, on October 24, 2023, MIS filed an action for ejectment and declaratory judgment in Baldwin County Circuit Court, 05-CV-2023-901333, against Allison Leblanc, Kathy Heindl, and J.P. Leblanc, because they remained in actual possession of the Property. (Doc. 32-1, PageID. 231-34; Doc. 67, PageID. 594). On March 25, 2024, MIS, Inc. filed a motion for summary judgment, which was granted by the Court on April 23, 2024. (Doc. 32-1, PageID. 235-38; Doc. 32-3, PageID. 240; Doc. 67, PageID. 594) LeBlanc alleges that she asked the judge how long she and her family had to vacate their home, but an exact answer was never given. (Doc. 67, PageID. 594). She further alleges that MIS did not inform her of her "Constitutional right to Trial By Jury…." (*Id*.). MIS submitted an Application for Writ of Possession on June 5, 2024. (*Id*.). A copy of this filing was allegedly not sent to LeBlanc, her mother, or her husband. (*Id*.). On June 11, 2024, the state court issued a writ of restitution or possession, commanding law enforcement "to restore [MIS] to possession of the land and tenements which [MIS] recovered of [Allison Leblanc, Kathy

Heindl, and J.P. Leblanc] in an action of forcible entry and detainer ....” (Doc. 32-4, PageID. 241). According to LeBlanc, no advance notice was given by the Sheriff's office prior to execution of the Writ, nor was she informed of any right to appeal the judge's decision or the Writ of Possession. (Doc. 67, PageID. 595). Mr. McGowan, of MIS, texted or left a phone message for LeBlanc that she needed to contact him if she “didn't want something really bad to happen,” but she had no idea to what he was referring. (*Id.*).

On the morning of June 20, 2024, deputies from the Baldwin County Sheriff's Office (“BCSO”) came onto the property by “popping the pin” on a chained and locked gate in riot gear with shields and shotguns drawn**.** (*Id.*). Deputy Clarence Herring served Kathy Heindl with the writ on June 20, 2024. (Doc. 32-6, PageID. 242). The state court awarded damages for mesne profits to MIS on July 15, 2024, finding that MIS “obtained fee simple title to the Property via Foreclosure Deed” and that the court's writ of possession “was duly executed.” (Doc. 32-6, PageID. 243-44).

In her Complaint, Plaintiff bases her § 1983 claim against MIS on her allegation that MIS violated her due process rights in Baldwin County Circuit Court “by using an unfair court process that violated federal law and court rules” and by not serving her with the Writ of Possession. (*Id.*, PageID. 601). The Eleventh Circuit clearly held in *Hammer* that “[t]he use of the state courts by [a private company] to seize its property [does] not transform it into a state actor.” 589 F. App'x at 516. This Court agrees and accordingly finds that MIS was not a state actor here and LeBlanc's §1983 claim against it is due to be dismissed.

## 2. Issue Preclusion

Issue preclusion bars a party from relitigating issues previously decided in a prior case, even if the claims are different. *See B&B Hardware, Inc. v. Hargis Indus., Inc.,* 575 U.S. 138, 148 (2015). The United States Supreme Court "has long recognized that 'the determination of a question directly involved in one action is conclusive as to that question in a second suit.'" *Id.* at 147 (quoting *Cromwell v. Cnty. of Sac*, 94 U.S. 351, 354 (1877)). "The idea is straightforward: Once a court has decided an issue, it is 'forever settled as between the parties,' *Baldwin v. Iowa State Traveling Men's Assn,* 283 U.S. 522, 525 ... (1931), thereby 'protect[ing]' against 'the expense and vexation attending multiple lawsuits, conserv[ing] judicial resources, and foster[ing] reliance on judicial action by minimizing the possibility of inconsistent verdicts,' *Montana v. U.S.*, 440 U.S. 147, 153-54 ...(1979)." *Id.*

"To claim the benefit of [issue preclusion] the party relying on the doctrine must show that: (1) the issue at stake is identical to the one involved in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the first action; and (4) the party against whom [issue preclusion] is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Pleming v. Universal-Rundle Corp.,* 142 F.3d 1354, 1359 (11th Cir. 1998) (internal quotation marks and citation omitted). "In determining when an issue has been 'actually litigated,' the *Pleming* court cited with approval the Restatement's formulation that '[w]hen an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated.'" *Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000) (citing *Pleming*, 142 F.3d at 1359).

The state court necessarily ruled that MIS owned all right, title, and interest to the Property when it granted summary judgment in MIS's favor on its ejectment and declaratory judgment claims against LeBlanc. (Docs. 32-2, 32-3). In its order awarding mesne profits to MIS, the Baldwin County court concluded that LeBlanc "unlawfully occupied the Property" from September 26, 2023 through June 20, 2024. (Doc. 32-6). Most importantly, for purposes of the instant action, the state court explicitly determined that its writ of possession "was duly executed." (Doc. 32-6, PageID. 243-44). While the Baldwin County court did summarily state that the writ of possession was "duly executed upon by the Baldwin County Sheriff's office" and did issue a written order awarding MIS damages, finding that "the Defendants unlawfully occupied the Property," there is nothing in the state court record that states that the issue of proper notice was litigated or that it was ever raised in the state court. However, the state court's award of damages to MIS at the very least implies that the notice given was proper. In addition, the state court record and Plaintiff's allegations show that LeBlanc knew about the writ of possession at the time it was issued by the Court and knew at that time that she and her family were required to vacate the premises. Therefore, the Court finds that LeBlanc's due process claim is, in the alternative, barred by issue preclusion.

For these reasons, the Court finds that Count One of LeBlanc's Complaint as to MIS is due to be dismissed.

## C. <u>Section 1985(3) Claim</u>

In Count Two of her Complaint, entitled "42 U.S.C. § 1985(3) Conspiracy to Interfere With Civil Rights," LeBlanc asserts:

> BCSO deputies and MIS, Inc. officers conspired to separate me and my family from our personal property based on

> conjecture that we were members of a right-wing, anti-
> government group. In body camera footage from the
> investigation that led to my false arrest for a false claim of
> trespass, multiple deputies express [sic] derogatory
> comments about me and my "right wing" extremism. I am a
> Trump supporter and we did keep patriotic flags flying along
> our front fence, but I am not an activist or a member of a
> militia. I do support our Constitution and expect our Public
> Officials to honor their Oath of Office.

(Doc. 67, PageID. 603-04). In the "Legal Background" section of her Complaint, LeBlanc

asserts that "[t]wo clauses in subsection (3) are relevant to this case [and] [t]hese are

commonly referred to as the 'deprivation clause' and the 'support or advocacy clause.'"

To prevail on a claim under § 1985(3), which is also known as the

Ku Klux Klan Act, a plaintiff must prove the following elements:

> (1) a conspiracy, (2) for the purpose of depriving, either
> directly or indirectly, any person or class of persons of the
> equal protection of the laws, or of equal privileges and
> immunities under the laws; and (3) an act in furtherance of
> the conspiracy, (4) whereby a person is either injured in his
> person or property or deprived of any right or privilege of a
> citizen of the United States.

*Childree v. UAP/GA CHEM, Inc.,* 92 F.3d 1140, 1147 (11th Cir. 1996) (citing *Lucero v.*

*Operation Rescue,* 954 F.2d 624, 627 (11th Cir. 1992)). "The second element requires a

showing of some racial, or perhaps otherwise class-based, invidiously discriminatory

animus behind the conspirators' action." *Id.* (internal quotation marks and citations

omitted) (finding that whistleblowers are not a protected class under § 1985(3)). The

"animus standard requires that the defendant proceeded on his course of conduct

'because of, not merely in spite of, its adverse effects upon an identifiable group.'" *Dean*

*v. Warren,* 12 F.4th 1248, 1255 (11th Cir. 2021) (quoting *Bray v. Alexandria Women's*

*Health Clinic,* 506 U.S. 263, 271-72 (1993)). The *Dean* court discussed both the *Scott*

case, *United Bd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott,* 463 U.S.

825 (1983), relied upon by LeBlanc, and the *Bray* case, both of which elaborated on §

1985(3)'s animus requirement in reaching its determination:

> In *Scott,* the Court considered whether "conspiratorial
> discrimination against employees of a non-unionized entity"
> satisfied § 1985(3)'s animus requirement. The lower courts
> agreed that it did. The Supreme Court reversed. Taking no
> position on the question whether § 1985(3) "reaches
> conspiracies other than those motivated by racial bias," the
> Court rejected the proposition that § 1985(3) "forbids
> conspiracies against workers who refuse to join a union."
> The Court acknowledged that § 1985(3) plainly forbids
> "class-based animus ... against [African Americans] and
> those who championed their cause." It went on to hold,
> though, that the statute's legislative history suggested that
> Congress did not intend for it to extend to "conspiracies
> motivated by economic or commercial animus" and that such
> an expansive construction of § 1985(3) was "not compelled"
> by its plain language.
>
> In *Bray*, the Court offered its most thorough discussion of the
> animus requirement to date. It held that a conspiracy to
> obstruct access to an abortion clinic was not actionable
> under § 1985(3) because the abortion-clinic plaintiffs failed
> to satisfy the animus requirement. The Court explained that
> the animus requirement is comprised of two analytically
> distinct inquiries: (1) whether there is a "qualifying class" and
> (2) whether the defended was motivated by discriminatory
> animus against the class.
> * * *
> Dean's political class-based § 1985(3) theory is also
> precluded by *Bray*. The theory is that Warren undertook the
> conspiracy to prevent Dean and her protesting teammates
> from exercising their First Amendment rights because Dean
> and her protesting teammates were members of a political
> class: *protestors of police brutality against African
> Americans.*
>
> The Supreme Court has long reserved the question whether
> § 1985(3) prohibits conspiracies targeting political classes.
> *See Scott,* 463 U.S. at 835-37, 103 S. Ct. 3352 ("follow[ing]
> [G*riffin's*] course" by withholding judgment on the question
> whether § 1985(3) covers conspiracies targeting political

classes). And the courts of appeals are divided on this question. *See Farber v. City of Paterson,* 440 F.3d 131, 139 & n.7, 143 (3d Cir. 2006) (collecting cases discussing, and taking position in, the split). We have never answered the question with binding precedent, and this case provides us with no opportunity to do so, for it can be resolved on narrower grounds.

*Dean*, 12 F.4th at 1258 & 1263 (internal citations omitted, with limited exceptions).

In *Dean*, the Court concluded that the class – "protestors of police brutality against African Americans" – did not satisfy *Bray* because it "forbids § 1985(3) plaintiffs from grounding their claims on classes defined by the conduct the defendants oppose." *Id* at 1263 (citing *Bray*, 506 U.S. at 269). The *Dean* court also rejected the proposed class because it was not an identifiable and discrete group. *Id.* at 1264 (citing *Aulson v. Blanchard,* 83 F.3d 1, 5-6 (1st Cir. 1996) (holding that a § 1985(3) class "[must be] comprised of a distinctive and identifiable group" and therefore rejecting a class defined as "persons who support other persons opposed to the politics of the old guard" (internal quotation marks omitted))).

No Eleventh Circuit case has ever found a class defined as members of an unnamed and unidentified "right-wing, anti-government group" or a class made up of Trump supporters to be a protected group under § 1985(3) and this Court declines to do so here. At best, LeBlanc's allegations show that she and her family were a class "defined by conduct the defendants oppose." Moreover, LeBlanc's vague allegations seem to conflate two separate occurrences as she refers to being separated from her personal property, which presumably refers to the day the writ of possession was served and her personal property was removed from the house and placed at the curb, and she refers to her alleged trespass arrest which she asserts occurred at a later date.

Even if she could prevail on her claim that she is in a protected class, she has set forth no reasonable allegations supporting any conspiratorial efforts on the part of MIS. Rather, her allegations show that MIS followed legal means of recovering possession of property that it owned. Simply stated, LeBlanc has not and cannot state a claim against MIS pursuant to § 1985(3) under the facts of this case. Accordingly, her § 1985(3) claim against MIS is due to be dismissed with prejudice.

**D. <u>State Law Claims</u>**

The remaining claims asserted against MIS - Count Nine:  Replevin, Count Ten: Conversion, and Count Eleven: Destruction of Property – are purely state law claims that are only asserted against MIS. In this action, original jurisdiction in this Court is based on federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343. Section 1367(a) states that "[i]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, § 1367(c)(3) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... (3) the district court has dismissed all claims over which it has original jurisdiction...." 28 U.S.C. § 1367(c)(3). The undersigned has recommended above that all claims asserted against MIS over which it has original jurisdiction be dismissed.

"When exercising discretion to decline supplemental jurisdiction, the district court should consider principles of judicial economy, comity, convenience, and fairness to the parties." *Finley v. Albritton*, Civil Action No. 2:23-00464-KKD-PBM, 2025 WL 2085048 at

20

*25 (M.D. Ala. June 25, 2025) (citing *Palmer v. Hosp. Auth. Of Randolph Cnty.*, 22 F.3d 1559, 1569 (11th Cir. 1994)). The Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.,* 370 F.3d 1086, 1089 (11th Cir. 2004) (citing *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984)). MIS and LeBlanc have each filed actions against one another in state court concerning the Property at issue here; therefore, the state court is extremely familiar with the issues surrounding and presented by LeBlanc's claims against MIS. This Court is not. Upon consideration of the principles of judicial economy, comity, convenience, and fairness to the parties, the undersigned recommends that the district court decline to exercise supplemental jurisdiction over the remaining state law claims asserted against MIS and, accordingly, recommends that those claims be dismissed without prejudice.

## IV. <u>Conclusion</u>

For the reasons set forth above, the undersigned Magistrate Judge **RECOMMENDS** that Defendant MIS, Inc.'s Motion to Dismiss (Doc. 75) as to Counts One and Two be **GRANTED** and that all claims asserted against MIS in Counts One and Two be **DISMISSED with prejudice.** The undersigned further **RECOMMENDS** that the Court decline to exercise supplemental jurisdiction over Counts Nine, Ten, and Eleven that are state law claims asserted solely against MIS and that these Counts be **DISMISSED without prejudice.**

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen.LR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."  11th Cir. R. 3-1.  To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 12th day of December, 2025.

/s/ P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**